**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RALPH EDWARD DYKES, JR., | ) | Case No. 1:25-CV-675-JJH |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| HAROLD MAY, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.   INTRODUCTION

Petitioner, Ralph Edward Dykes, Jr. ("Mr. Dykes"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Dykes is serving a sentence of seven to ten and one-half years in prison after being convicted of one count of possession of a fentanyl-related compound.

Mr. Dykes asserts three grounds for relief. Respondent, Warden Harold May ("Warden"), filed an answer/return of writ on June 23, 2025. (ECF No. 10). Mr. Dykes did not file a traverse. This matter was referred to me on April 9, 2025 under Local Rule 72.2 to prepare a report and recommendation on Mr. Dykes' petition. (*See* ECF non-document entry dated April 9, 2025). For the reasons set forth below, I recommend that Mr. Dykes' petition be DISMISSED and/or DENIED. I also recommend that the Court not grant Mr. Dykes a certificate of appealability.

## II.   RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by

clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Eleventh Appellate District summarized the facts as follows:

> {¶2} On June 23, 2022, agents from the Lake County Narcotics Agency received information from the Wickliffe Police Department that appellant was suspected of trafficking in fentanyl. Wickliffe detectives had been conducting surveillance at the Fairbridge Inn and Suites where appellant was apparently residing.
>
> {¶3} Officers obtained a search warrant and officers and agents entered the room where appellant occupied. Appellant was removed and suspected contraband, in the form of small blue pills, was retrieved from the room. The evidence was sent to the Lake County Crime Laboratory ("LCCL") for testing. Kimberly Gilson, a forensic analyst with the LCCL, determined she received in evidence a total of 337 unit doses (pills). LCCL received the evidence in three separate receptacles. Of the unit doses tested, each tested positive for fentanyl or a fentanyl-related compound.

(ECF No. 10-1, Exhibit 17); *State v. Dykes*, No. 2023-L-055, 230 N.E.3d 590, 2023-Ohio-4378 (11th Dist. Dec. 4, 2023).

## III. PROCEDURAL HISTORY

### A. <u>State Court Conviction</u>

On July 25, 2022, Mr. Dykes was indicted in the Lake County Court of Common Pleas on one first-degree felony count of possession of a fentanyl-related compound in violation of O.R.C. § 2925.11. (ECF No. 10-1, Exhibit 1). On July 29, 2022, Mr. Dykes pled not guilty to the charge. (ECF No. 10-1, Exhibit 2).

On September 1, 2022, Mr. Dykes filed a motion to represent himself *pro se*. (ECF No. 10-1, Exhibit 3). After holding a hearing, the trial court denied Mr. Dykes' motion, holding that he did not have the ability to represent himself and was unable to knowingly and intelligently waive his right to counsel. (ECF No. 10-1, Exhibit 6).

On September 2, 2022, Mr. Dykes filed a *pro se* motion to suppress, arguing that the police lacked probable cause to conduct a search of the hotel room. (ECF No. 10-1, Exhibit 7). On September 7, 2022, Mr. Dykes' counsel also filed a motion to suppress on Mr. Dykes' behalf. (ECF No. 10-1, Exhibit 8). On February 3, 2023, the trial court denied the motions to suppress. (ECF No. 10-1, Exhibit 10).

The case proceeded to trial. On March 29, 2023, the jury convicted Mr. Dykes of possession of a fentanyl-related compound. (ECF No. 10-1, Exhibit 12). On April 17, 2023 the trial court sentenced Mr. Dykes to a term of seven to ten and one-half years in prison. (ECF No. 10-1, Exhibit 13).

**B.  Direct Appeal**

On May 16, 2023, Mr. Dykes, through counsel, filed a notice of appeal to the Eleventh Appellate District. (ECF No. 10-1, Exhibit 14). In his appellate brief, Mr. Dykes raised the following assignment of error:

1. Appellant's conviction was based upon insufficient evidence and was against the manifest weight of the evidence.

(ECF No. 10-1, Exhibit 15).

On December 4, 2023, the Eleventh Appellate District affirmed. (ECF No. 10-1, Exhibit 17). On February 24, 2024, Mr. Dykes, acting *pro se*, filed a motion for leave to file a delayed appeal to the Ohio Supreme Court pursuant to Ohio Supreme Court Rule of Practice 7.01(A)(4)(a). (ECF No. 10-1, Exhibit 18). On April 30, 2024, the Ohio Supreme Court denied Mr. Dykes' motion and dismissed the appeal. (ECF No. 10-1, Exhibit 20).

**C.  Rule 26(B) Motion to Reopen Appeal**

On February 26, 2024, Mr. Dykes, acting *pro se*, filed a motion in the Eleventh Appellate District to reopen his appeal pursuant to Ohio Appellate Rule 26(B), arguing that

he received the ineffective assistance of appellate counsel during his direct appeal. (ECF No. 10-1, Exhibit 21). In particular, Mr. Dykes argued that his appellate counsel was ineffective in failing to argue that the trial court should have suppressed evidence obtained from the hotel room because the search warrant was not supported by probable cause. Mr. Dykes also argued that appellate counsel was ineffective in failing to argue that there were grounds for acquittal under Ohio Criminal Rule 29.

On May 1, 2024, the Eleventh Appellate District denied Mr. Dykes' application to reopen. (ECF No. 10-1, Exhibit 23). Mr. Dykes did not appeal the Eleventh Appellate District's decision to the Ohio Supreme Court.

### D. Petition to Vacate or Set Aside Judgment of Conviction

On January 14, 2025, Mr. Dykes, acting *pro se*, filed a petition in the trial court to set aside his judgment of conviction pursuant to O.R.C. § 2953.21, again arguing that the search of the hotel room violated his Fourth Amendment rights. (ECF No. 10-1, Exhibit 24). On January 17, 2025, Mr. Dykes filed a second petition to set aside his judgment of conviction, raising the same arguments. (ECF No. 10-1, Exhibit 28). On February 3, 2025, the trial court denied Mr. Dykes' petition, holding that his petition was untimely and that *res judicata* barred his claims. (ECF No. 10-1, Exhibit 31). Mr. Dykes did not appeal the trial court's ruling.

### E. Federal Habeas Action

On or about March 31, 2025, Mr. Dykes, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1).[1] Mr. Dykes' habeas petition raises the following grounds for relief:[2]

---

[1] As discussed below, the precise date on which Mr. Dykes filed his petition is unclear.
[2] Mr. Dykes' grounds for relief are presented verbatim.

4

1. Fourth Amendment United State Constitution, Article I Section 14 Ohio Constitution.

   Supporting Facts: Defendants motion to suppress evidence obtained through execution of search warrant where the search warrant was not supported by probable cause. No search w shall issue but upon probable cause under oath/witness for affidavit did not go under oath.

2. Fourth and Fourteenth Amendment, Article I Section 14 Ohio Constitution, 5th Amendment.

   Supporting Facts: No witness under oath – no video/audio recordings. Just hearsay – due process violated Fifth Amendment. Evidence used against him at trail was obtained in an unconstitutional search and seizure and couldn't raise them in trail.

3. Sixth Amendment to U.S. Constitution, Sec 10 Art. I.

   Supporting Facts: Compulsory process, confrontation of adverse witnesses. Informed of the nature of charges. Right to effective assistance of counsel.

*Id*. The Warden filed an answer/return of writ on June 23, 2025. (ECF No. 10). Because Mr. Dykes did not file a traverse, on August 15, 2025, I entered an order giving Mr. Dykes until September 5, 2025 to do so. (*See* ECF non-document entry dated August 15, 2025). I also informed Mr. Dykes that if he did not file a traverse by that date, I would proceed to consider his petition. *Id*. Mr. Dykes did not file a traverse by September 5, 2025 and has not filed a traverse to date.

On August 11, 2025, Mr. Dykes filed a notice of appeal to the Sixth Circuit. (ECF No. 11). It is not apparent from Mr. Dykes' notice of appeal what ruling he was appealing. On September 12, 2025, the Sixth Circuit granted Mr. Dykes' motion to voluntarily dismiss his appeal. (ECF No. 12).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. **Jurisdiction**

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court

5

only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Lake County Court of Common Pleas sentenced Mr. Dykes, and the Court takes judicial notice that Lake County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Dykes' § 2254 petition.

### B. Exhaustion and Procedural Default

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply

6

with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a

fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted).

### D. AEDPA Standard of Review

28 U.S.C. § 2254, as amended by AEDPA, provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

8

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than

incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

10

possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

### A. Statute of Limitations

The Warden first argues that the Court should dismiss Mr. Dykes' petition as time-barred because Mr. Dykes did not file it within the applicable statute of limitations and because no form of tolling applies to save his claims. The Warden's argument is not well-taken.

AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petitioner's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). The one-year limitations period begins to run from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> 28 U.S.C. § 2244(d)(1).

Cases become final for purposes of § 2244(d)(1)(A) when the time to file a direct appeal has expired, including the time to file a petition for a writ of certiorari to the United States Supreme Court. *See Lawrence v. Florida*, 549 U.S. 327, 333 (2007).

11

The Eleventh Appellate District affirmed the trial court's judgment on December 4, 2023. (ECF No. 10-1, Exhibit 17). Mr. Dykes had 45 days from that date, or until January 18, 2024, to file an appeal to the Ohio Supreme Court. *See* Ohio S. Ct. Prac.R. 7.01(A)(1)(a)(i). Mr. Dykes did not file a notice of appeal by that date. Instead, Mr. Dykes filed a motion for leave to file a delayed appeal on February 27, 2024. (ECF No. 10-1, Exhibit 18). However, while a motion for a delayed appeal can toll the statute of limitations, it does not restart it. *See DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006); *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001); *Baker v. Haviland*, No. 3:20-cv-2334, 2022 WL 18936014, at *4 (N.D. Ohio Dec. 14, 2022), *report and recommendation adopted*, 2023 WL 2354684 (N.D. Ohio Mar. 3, 2023) (holding that "a motion for delayed appeal is an application for collateral review or postconviction relief," not a part of direct review, and does not impact the date on which a judgment becomes final under § 2244(d)(1)(A)). Accordingly, the statute of limitations began running on January 19, 2024, the day after Mr. Dykes' deadline to appeal to the Ohio Supreme Court expired. Absent tolling, Mr. Dykes had one year from that date, or until January 19, 2025, to file his habeas petition.

The precise date on which Mr. Dykes filed his petition is not entirely clear. Under the "mailbox" rule, a habeas petition is deemed filed when the prisoner presents the petition to prison officials for filing. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F. 3d 452, 456 (6th Cir. 2012). However, Mr. Dykes did not certify in his petition when he presented it to prison officials for mailing. (ECF No. 1, PageID # 15). Nor did he indicate when he signed the petition. *Id*. Instead, the only apparent date related to Mr. Dykes' petition is March 31, 2025, the date on which the petition was mailed. (ECF No. 1-3). Mr. Dykes did not file a traverse, and has not challenged the Warden's assumption that March 31, 2025 is the relevant

12

date for statute of limitations purposes. Absent any other information, I conclude that Mr. Dykes filed the petition on March 31, 2025. His petition is therefore untimely by more than two months unless some form of tolling applies.

§ 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Accordingly, "[t]he one-year period of limitations is tolled" while a properly filed application for state post-conviction or other collateral review is pending. *Keeling*, 673 F.3d at 459 (quoting 28 U.S.C. § 2244(d)(2)).

The Warden concedes that Mr. Dykes' motion for leave to take a delayed appeal to the Ohio Supreme Court tolled the statute of limitations even though the Ohio Supreme Court ultimately denied Mr. Dykes' motion. *See Board v. Bradshaw,* 805 F.3d 769, 776 (6th Cir. 2015) (holding that even an unsuccessful motion for leave to file delayed appeal tolls AEDPA's statute of limitations). The tolling period began on February 27, 2024, 39 days after the AEDPA statute of limitations began to run. (ECF No. 10-1, Exhibit 18), The statute of limitations remained tolled until April 30, 2024, when the Ohio Supreme Court denied Mr. Dykes' motion. (ECF No. 10-1, Exhibit 20).

On February 26, 2024, while his motion for leave to file a delayed appeal was pending, Mr. Dykes also filed a Rule 26(B) application in the Eleventh Appellate District to reopen his appeal. (ECF No. 10-1, Exhibit 21). The Warden concedes that Mr. Dykes' Rule 26(B) application also tolled the statute of limitations.

The Eleventh Appellate District denied Mr. Dykes' application on the merits on May 1, 2024. (ECF No. 10-1, Exhibit 23). Mr. Dykes did not appeal the Eleventh Appellate

13

District's ruling to the Ohio Supreme Court, and the Warden assumes that the statute of limitations resumed running on May 2, 2024, the date after the Eleventh Appellate District's decision. In *Holbrook v. Curtin*, 833 F.3d 612 (6th Cir. 2016), however, the Sixth Circuit held that AEDPA's statute of limitations remains tolled during the window for a petitioner to appeal an unfavorable ruling on a postconviction petition, even if the petitioner does not actually file an appeal. *Id.* at 619 ("we hold that Holbrook's federal habeas petition was timely filed because AEDPA's one-year statute of limitations was tolled during the period in which he could have, but did not, appeal the Michigan Court of Appeal's denial of his motion for post-conviction relief"); *see also Arnoff v. Fender*, No. 25-3326, 2025 WL 2985844, at *2 (6th Cir. Sept. 16, 2025) (holding that statute of limitations was tolled during "the 45 days in which [petitioner] could have appealed the denial of his Rule 26(B) motion to the Ohio Supreme Court"); *Pena v. Turner*, No. 3:16-CV-01023, 2017 WL 9476858, at *11 (N.D. Ohio Jan. 5, 2017), *report and recommendation adopted*, 2017 WL 1100572 (N.D. Ohio Mar. 24, 2017) ("Although [petitioner] did not file a notice of appeal with the Supreme Court of Ohio from the denial of his App. R. 26(B) application, in light of the Sixth Circuit's decision in *Holbrook*, [petitioner] would be entitled to tolling of the state of limitations for an additional 45 days, i.e., the time in which [petitioner] had to file an appeal with the Supreme Court of Ohio.").

In light of *Holbrook*, the statute of limitations was tolled for an additional 45 days after the Eleventh Appellate District's decision, or until June 17, 2024.[3] It began running the next day, and Mr. Dykes had 326 remaining days, or until May 9, 2025, to file his habeas

---

[3] Forty-five days from May 1, 2024 was June 15, 2024, which was a Saturday. June 17, 2024 is the next weekday. *See* Ohio S. Ct. Prac.R. 3.03(A)(1) (providing that, if the last day of a time period falls on a weekend or a legal holiday, the period shall run until the next weekday that is not a legal holiday).

14

petition. His petition was mailed on March 31, 2025, and is therefore timely.

### B. **Procedural Default**

The Warden next argues that Mr. Dykes procedurally defaulted on all of his claims because he did not present them at all levels of the state court review process while state court avenues remained open to him. I agree.

"[F]ederal courts ordinarily may not 'consider a claim in a *habeas* petition that was not fairly presented to the state courts' absent cause and prejudice to excuse the procedural default." *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (cleaned up). "[I]t does not suffice to only present the claim to a state trial court; rather, the petitioner must raise the claim in state court and 'pursue [it] through the state's ordinary appellate review procedures." *Id*. at 751-52 (quoting *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009)).

Mr. Dykes did not fairly present any of his claims to all levels of the state court review process. In his direct appeal to the Eleventh Appellate District, he argued only that his conviction was based on insufficient evidence and was against the manifest weight of the evidence. (ECF No. 10-1, Exhibit 16). Those are not claims that he is pursuing in this proceeding. Moreover, when Mr. Dykes attempted to take a delayed appeal to the Ohio Supreme Court, the court denied his motion and dismissed the appeal. (ECF No. 10-1, Exhibit 20). It is well-settled that the Ohio courts' denial of a motion for leave to take a delayed appeal constitutes an independent and adequate state ground that precludes habeas review under *Maupin. See Prieto v. Schweitzer*, 4:18CV00222, 2019 WL 2605639, at *6 (N.D. Ohio May 31, 2019), *report and recommendation adopted*, 2021 WL 147049 (N.D. Ohio Jan. 15, 2021); *Davenport v. Fender*, No. 1:20-CV-0561, 2023 WL 1785492, at *13 (N.D. Ohio Jan. 5, 2023), *report and recommendation adopted*, 2023 WL 1782121 (N.D. Ohio Feb. 6, 2023).

Mr. Dykes raised an ineffective assistance of counsel claim for the first time in his Rule 26(B) application to reopen his direct appeal, in which he argued that his appellate counsel should have challenged the constitutionality of the search of the hotel room. (ECF No. 10-1, Exhibit 21). However, after the Eleventh Appellate District denied Mr. Dykes' application, he did not file an appeal to the Ohio Supreme Court, and thus did not fairly present his claim at all levels of the state court review process. *See Nian*, 994 F.3d at 751-52.[4]

Mr. Dykes raised his Fourth Amendment claims in his petition to vacate or set aside his conviction. (ECF No. 10-1, Exhibit 24). However, the trial court denied Mr. Dykes' petition both because it was untimely and because res judicata barred his claims. (ECF No. 10-1, Exhibit 31). Both bases for the trial court's ruling result in a procedural default. *See Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 219 (6th Cir, 2019) ("denying a postconviction motion or appeal based on untimeliness is an independent and adequate state procedural ground."); *Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012) (noting that the Sixth Circuit has "repeatedly held that Ohio's *res judicata* rule is an adequate and independent state procedural ground for purposes of procedural default." ). In addition, Mr. Dykes did not appeal the trial court's ruling and did not present his claims to at all levels of the state court review process. *See Nian*, 994 F.3d at 751-52. Mr. Dykes has therefore procedurally defaulted on all of his claims.

Mr. Dykes' procedural default can be excused if he demonstrates either cause and prejudice or that failure to consider his claims on the merits would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Mr. Dykes has not argued that his

---

[4] Mr. Dykes cannot seek leave to file a delayed appeal to the Ohio Supreme Court, as Ohio only permits delayed appeals during direct appeal, not during Rule 26(B) proceedings. *See* Ohio S. Ct. Prac.R. 7.01(A)(4)(c).

procedural default should be excused on cause and prejudice grounds. In his Rule 26(B) application, however, Mr. Dykes argued that he received the ineffective assistance of appellate counsel, which can constitute cause to excuse a procedural default. *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). "However, 'an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.'" *Id*. (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). Because Mr. Dykes did not appeal the Eleventh Appellate District's denial of his Rule 26(B) application to the Ohio Supreme Court, he procedurally defaulted on his ineffective assistance of appellate counsel claim, and his counsel's alleged ineffectiveness cannot constitute cause to excuse the default. Nor has Mr. Dykes provided new, reliable evidence showing that he is actually innocent of the offense for which he was convicted. I therefore recommend that the Court dismiss Mr. Dykes' petition because he has procedurally defaulted on his claims. Out of an abundance of caution, however, I will consider the merits of his claims as well.

## C. Merits

### 1. Ground One: Fourth Amendment

In his first ground for relief, Mr. Dykes asserts that his Fourth and Fourteenth Amendment rights were violated because the charges against him arose from an illegal search and seizure. The Warden argues that Mr. Dykes' claim is not cognizable in a federal habeas proceeding. I agree.

In *Stone v. Powell*, the Supreme Court held that, given the "nature and purpose" of the Fourth Amendment exclusionary rule, habeas review is generally unavailable to petitioners who asset that evidence obtained through an unconstitutional search and seizure was introduced at trial. 428 U.S. 465, 481-82 (1976). Thus, a habeas petitioner may not pursue a Fourth Amendment claim "if he had a full and fair opportunity to raise the claim in state

court and presentation of the claim was not thwarted by any failure of the state's corrective processes." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).

To determine whether *Powell* bars a petitioner's Fourth Amendment claim, a court conducts a two-step review process. First, the court "must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). Second, the court "must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id*.

Mr. Dykes does not argue that Ohio's procedures, in the abstract, fail to provide criminal defendants with an opportunity to raise a Fourth Amendment claim, and the Sixth Circuit has held that Ohio's procedures are "clearly adequate." *Riley*, 674 F.2d at 526. Nor does he argue that the State failed to give him the opportunity to raise a Fourth Amendment claim in his particular case. To the contrary, Mr. Dykes and his counsel both filed motions to suppress, which the trial court considered and denied on the merits. (ECF No. 10-1, Exhibits 7-8). Because Mr. Dykes had an opportunity to raise his Fourth Amendment claim during the trial court proceedings, I alternatively recommend that the Court dismiss Mr. Dykes' first ground for relief as non-cognizable.

### 2. *Ground Two: Fourth and Fifth Amendments*

In his second ground for relief, Mr. Dykes again raises a Fourth Amendment claim, arguing that the State obtained the evidence against him through an illegal search and seizure. For the reasons discussed above, I recommend that the Court dismiss that portion of Mr. Dykes' second ground for relief as non-cognizable.

In addition to his Fourth Amendment claim, Mr. Dykes asserts in his second ground for relief that his Fifth Amendment rights were violated, stating, "no witness under oath-no

18

video/audio recordings just hearsay." (ECF No. 1, PageID # 7). The Warden argues that the Court should dismiss that portion of Mr. Dykes' claim pursuant to Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which provides that a petition "must," among other things "state the facts supporting each ground." I agree.

"To comply with Habeas Rule 2(c), a petitioner must give sufficiently detailed facts to enable the court to determine 'from the face of the petition alone' whether the petition merits further review." *Jackson v. Smith*. No. 1:10 CV 2052, 2011 WL 3566646, at *4 (N.D. Ohio June 13, 2011), *report and recommendation adopted*, 2011 WL 3566771 (N.D. Ohio Aug. 12, 2011) (quoting *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990)). "'Notice' pleading is insufficient in the habeas context, as the petitioner is expected to state facts that point to a real possibility of constitutional error." *Johnson v. Coleman*, No. 3:15 CV 696, 2015 WL 5316254, at *2 (N.D. Ohio Sept. 10, 2015) (citing *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977). "Dismissal under Rule 2(c) is appropriate in cases where . . . it is impossible to determine from the petitioner's pleadings the exact errors of fact or law raised for adjudication." *Austin v. Buchanan*, No. 4:20 CV 628, 2020 WL 8910834, at *2 (N.D. Ohio Apr. 23, 2020) (quoting *Reynolds v. Warden, Lebanon Corr. Inst.*, No. 2:19-CV-3495, 2019 WL 4862060, at *2 (S.D. Ohio Sept. 9, 2019)). Moreover, "[t]he habeas corpus rules do not require the federal courts to review the entire state court record of a petitioner to determine whether facts supporting the grounds exist." *Jackson*, 2011 WL 3566646 at *4.

The Warden is correct that Mr. Dykes has failed to comply with Habeas Rule 2(c). While Mr. Dykes asserts in his petition that his Fifth Amendment rights were violated because there were no witnesses under oath, no video or audio recordings, and because the State relied on hearsay testimony, he provides no detail about his claim. Instead, I am left to speculate

19

regarding what witnesses he believes should have testified under oath, what video or audio recordings the State should have introduced, and what hearsay testimony the State impermissibly relied upon. Because I cannot determine from the face of the petition what errors of fact or law Mr. Dykes is raising, I recommend that the Court dismiss Mr. Dykes' second ground for relief under Habeas Rule 2(c) to the extent he seeks to raise a Fifth Amendment claim.

### 3. *Ground Three: Ineffective Assistance of Counsel*

In his third and final ground for relief, Mr. Dykes asserts that he received the ineffective assistance of counsel. The nature of Mr. Dykes' ineffective assistance of counsel claim is not clear. In his petition, he cites the Sixth Amendment to the United States Constitution and references his "[r]ight to effective assistance of counsel." (ECF No. 1, PageID # 8). But he does not otherwise elaborate on his claim.

The Warden argues that the Court should dismiss Mr. Dykes' third ground for relief under Habeas Rule 2(c) because he has again failed to plead sufficient facts to determine the nature of his claim. I agree. Based on Mr. Dykes' petition, I cannot ascertain why he believes his counsel was ineffective, or even whether he is asserting an ineffective assistance of trial counsel claim, an ineffective assistance of appellate counsel claim, or both. Given the lack of clarity regarding Mr. Dykes' claim, I recommend that the Court dismiss his third ground for relief pursuant to Habeas Rule 2(c).

Alternatively, "[w]hile there is no requirement to do so, a court does not err in reviewing an otherwise insufficient habeas petition where the claims it raises are based on suppositions drawn from the petitioner's state court appeal." *Carter v. Schweitzer*, No. 3:19-CV-00240, 2022 WL 396736, at *10 (N.D. Ohio Jan. 3, 2022), *report and recommendation adopted*, 2022 WL 393923 (N.D. Ohio Feb. 9, 2022) (considering merits of petition despite

petitioner's failure to provide specific facts where petitioner's grounds for relief "parallel[ed] arguments made in his appeal to the Third District"); *see also George v. Smith*, No. 1:20-cv-957, 2022 WL 18144923, at *7-8 (N.D. Ohio Jan. 12, 2022), *report and recommendation adopted*, 2022 WL 18144924 (N.D. Ohio Feb. 17, 2022) (declining to dismiss *pro se* petition under Habeas Rule 2(c) even though claim was "vague" because claim was clearer "when read in context" of petitioner's memorandum in support of jurisdiction to the Ohio Supreme Court"). Mr. Dykes raised ineffective assistance of appellate counsel arguments in his Rule 26(B) application and, out of an abundance of caution, I will analyze those arguments here.

A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

Under the first prong of *Strickland*, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The *Strickland* standard is "extremely deferential." *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id*. (quoting *Strickland*, 466 U.S. at 687).

The right to effective assistance of counsel extends through the first appeal as of right.

21

*Evitts v. Lucey*, 469 U.S. 387, 394 (1985). However, it is well-settled that "the *Strickland* performance standard does not require an attorney to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Thus, to show that appellate counsel was ineffective in raising one argument over another, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did not present.'" *Caver*, 349 F.3d at 348 (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

When a state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide an additional layer of AEDPA deference to that adjudication under § 2254(d). *See Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

The Eleventh Appellate District addressed Mr. Dykes' ineffective assistance of appellate counsel arguments on the merits when it denied his Rule 26(B) application, ruling

22

as follows:

> As one basis for his application, appellant asserts that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence. In particular, he claims that, even though counsel argued insufficiency on direct appeal, he challenges the alleged lack of evidence that the samples tested by forensic analyst, Kimberly Gilson, were "homogenous or the same." We disagree.

> In *Dykes*, 2023-Ohio-4378, at ¶ 15, this court observed:

>> [D]espite appellant's contentions to the contrary, the state elicited testimony from Ms. Gilson that inferentially demonstrated the substances tested from the three separate receptacles possessed relative homogeneity as they related to the randomly selected samples. To wit, the state asked Ms. Gilson whether the samples are "homogenous, they're all the same or whether they're different?" Ms. Gilson responded that '[i]f [there] were differences they would be put into different populations. So if there was a color difference or a shape difference, then yes they would be in different populations." We conclude the foregoing was sufficient to establish the homogeneity of the substances that were wholly contained in each respective receptacle.

> *Id*. at ¶ 15.

> The argument with which appellant takes issue was addressed by this court and therefore we conclude counsel's performance was not deficient in this regard. As it pertains to appellant's argument relating to the sufficiency of the state's evidence, counsel was not ineffective.

> Next, appellant contends appellate counsel was ineffective for failing to challenge the trial court's judgment overruling trial counsel's motion to suppress. Specifically, appellant takes issue with the trial court's determination that the state possessed probable cause to support the search warrant leading to the discovery of the contraband upon which the charges were premised. Appellant contends there was insufficient evidence of probable cause and thus appellate counsel was deficient for failing to raise the issue on appeal and, as a result, he suffered prejudice. We do not agree.

> The Supreme Court of Ohio has set forth the following test for determining the sufficiency of probable cause in an affidavit for a search warrant. In *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), at paragraph two of the syllabus, the court held:

>> In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant.

23

Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (*Illinois v. Gates*, [462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)] followed.)

In light of this standard, the trial court overruled appellant's motion to suppress. In support, the trial court reviewed the foundation upon which the probable-cause finding was based. The court observed, pursuant to the affidavit in support, that the Wickliffe Police Department received information that appellant was involved in selling fentanyl pills. Investigators subsequently began surveillance at the Fairbridge Inn & Suites, where appellant was apparently staying. The court pointed out that, over the course of two consecutive days, officers conducted three separate traffic stops due to the surveillance. None of the individuals were connected with one another except they had just left Room #308 "where they met with [appellant] and in one way or another, blue fentanyl pills stamped as 30mg oxycodone were involved."

The court recounted the evidence of the three stops and, from the evidence, drew the following conclusions:

In this case, it is not just one person that provided information and a statement that was relied upon in the search warrant affidavit. Instead, it was three separate individuals involved in three separate, unrelated incidents that provided information, corroborating each other (which must be considered in conjunction with each other), that evidence of narcotics and drug trafficking would be located in Room #308 of the FairBridge Inn & Suites located at 28600 Ridge Hills Drive in Wickliffe, Ohio. [fn. It should be noted that it is not necessary that the affidavit establish probable cause that a particular person be involved in the criminal activity. While the affidavit in this case did connect the Defendant to being the same person involved in all three incidents, it is sufficient that the information relied upon only establish that probable cause exists that evidence of criminal activity will be located in a particular place, i.e. Room #308 of the FairBridge Inn & Suites located at 28600 Ridge Hills Drive in Wickliffe, Ohio.] Each of the individuals stopped by the police advised that they went to Room #308 of the FairBridge Inn & Suites where an individual who was a known drug dealer to each of them either sold or was in possession of blue fentanyl pills. In order to find that the statements provided by each of these individuals were not credible, the Court would have to believe that each of them lied to the police, but that their fabricated stories were coincidentally identical in that each of them implicated the Defendant in selling/possessing blue fentanyl pills in Room #308 of the FairBridge Inn & Suites. That is not reasonable. In fact, it is almost impossible. And, assuming arguendo, that each of their statements were, in hindsight, found to be fabricated and did, coincidentally, provide the same information, that would still not defeat the finding of probable cause at the time the determination was made. Even under these circumstances, it was still reasonable, and there was

24

a substantial basis, for the judge issuing the warrant to believe at the time that the three separate statements corroborating each other were credible and for believing that there was a factual basis for the information furnished.

*See* T.d. 59, Trial Court Judgment Entry Denying Defendant's Motion to Suppress, entered February 3, 2023.

"'At a hearing on a motion to suppress, the trial court functions as the trier of fact, and, therefore is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses.'" *State v. Key*, 11th Dist. Lake No. 2007-L-210, 2008-Ohio-2759, ¶ 14, quoting *State v. Molek*, 11th Dist. Portage No. 2001-P-0147, 2002-Ohio-7159, ¶ 24, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). "'The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence.'" *Key* at ¶ 14, quoting *State v. Hines*, 11th Dist. Lake No. 2004-L-066, 2005-Ohio-4208, ¶ 14, citing *State v. Searls*, 118 Ohio App.3d 739, 741, 693 N.E.2d 1184 (5th Dist.1997). "When ruling on a motion to suppress, we give due deference to the trial court's assignment of weight and inferences drawn from the evidence." *Key* at ¶ 14, citing *State v. Perl*, 11th Dist. Lake No. 2006-L-082, 2006-Ohio-6100, ¶ 9. The trial court, sitting as finder of fact, found the affidavit and evidence supporting the search warrant credible. In light of the record and the trial court's thorough treatment of appellant's challenge, we conclude no colorable, appellate issue exists regarding the trial court's treatment of appellant's motion. We therefore hold appellate counsel's performance was not deficient for opting not to raise an alleged error regarding the trial court's ruling; and, by implication, appellant was not prejudiced by counsel's decision not to raise the point. There was no ineffective assistance of appellate counsel for failure to challenge the trial court's judgment on appellant's motion.

(ECF No. 10-1, Exhibit 23).

Assuming that Mr. Dykes is seeking to raise the same arguments here, and applying the double layer of deference under AEDPA, the Eleventh Appellate District's holding was not contrary to or an unreasonable application of clearly established federal law. Rather, the Eleventh Appellate District reasonably concluded that counsel was not ineffective because Mr. Dykes' underlying sufficiency of the evidence and Fourth Amendment claims were without merit. Mr. Dykes has not shown that the arguments his appellate counsel failed to present were clearly stronger than the claims his appellate counsel did raise. I therefore alternatively recommend that the Court deny Mr. Dykes' third ground for relief on the merits.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time

26

of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Mr. Dykes has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Dykes' petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated:  May 18, 2026

*/s/Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may

27

consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).